1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MOHAMMAD SHER ISLAM,

Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,

Defendants.

Case No.  14-cv-05326-RS

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S
MOTION**

## I.     INTRODUCTION

In this action brought under the Administrative Procedure Act ("APA,") plaintiff

Mohammad Sher Islam challenges a decision of the U.S. Citizenship and Immigration Services

("USCIS") to deny his application for adjustment of citizenship status from asylee to lawful

permanent resident. The central dispute between the parties is whether collateral estoppel applies

to the issue of Islam's involvement in terrorist activities. An Immigration Judge's ("IJ's") decision

to grant an application for asylum necessarily includes a determination that the applicant was not

involved in terrorist activity prior to the proceeding. Therefore, if collateral estoppel does apply,

the IJ's decision to grant Islam's application for asylum would preclude the USCIS from denying

his application for adjustment of status based on terrorist activity that occurred before the asylum

application was granted. Because no exceptions to the doctrine of collateral estoppel apply here,

the USCIS's decision to deny Islam's application for adjustment of status was arbitrary, capricious

and contrary to law. Plaintiff's request for relief under the APA is granted.

United States District Court
Northern District of California

## II.     BACKGROUND

Plaintiff Mohammed Islam fled Pakistan in 2000 for fear of persecution, and applied for

asylum in the United States. In order for an IJ to grant an application for asylum, the applicant

must show that he or she qualifies as a refugee. 8 U.S.C. § 1158(b)(1)(A). A refugee is a person

unwilling or unable to return to their home country "because of persecution or a well-founded fear

of persecution on account of race, religion, nationality, membership in a particular social group, or

political opinion." 8 U.S.C. § 1101(a)(42)(A). The applicant also must show that there are no

statutory bars that would preclude him or her from relief. One such statutory bar is 8 U.S.C. §

1158(b)(2)(A)(v), which states that an alien who was involved in terrorist activity as defined in

sub clauses (I), (II), (III), (IV), or (VI) of 8 U.S.C. § 1182(a)(3)(B)(i) or 8 U.S.C. § 1227(a)(4)(B)

shall not be granted asylum. An IJ cannot grant asylum to an applicant who falls within any of the

aforementioned sub clauses.

Initially, the IJ denied plaintiff's asylum application, but the Board of Immigration Appeals

("BIA") reversed and remanded the case back to immigration court for further consideration. On

remand, the IJ granted plaintiff's asylum application pursuant to the BIA's decision. One year

later, plaintiff filed a Form I-485 application with the USCIS to adjust his citizenship status from

asylee to lawful permanent resident. The USCIS deemed plaintiff ineligible for an adjustment of

status because of his involvement with the All Pakistan Mohajir Students Organization

("APMSO") and Muttahida Quomi Movement-Altaf Faction ("MQM-A") in violation of the

Immigration and Nationality Act § 212(a)(3)(B)(i)(I).

The USCIS declared plaintiff ineligible for an adjustment of status to permanent resident

because he "engaged in terrorist activity," which is the statutory bar described in 8 U.S.C. §

1182(a)(3)(B)(i)(I). Specifically, the USCIS determined that plaintiff provided material support

and financial contribution under 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd) and solicited money for a

Tier III terrorist organization under 8 U.S.C. § 1182(a)(3)(B)(iv)(IV)(cc). A Tier III terrorist

organization is an undesignated "group of two or more individuals, whether organized or not,

which engages in, or has a subgroup which engages in" committing, planning, gathering

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 14-cv-05326-RS

2

1    information for, soliciting funds or soliciting people for a terrorist activity. 8 U.S.C. §

2    1182(a)(3)(B)(vi)(III); 8 U.S.C. § 1182(a)(3)(B)(iv)(I)-(VI). Defendant brings a motion for

3    summary judgment requesting that this court uphold the USCIS's denial of plaintiff's adjustment

4    of status application based on his engagement in terrorist activities.

5            The parties bring cross motions for summary judgment, on the issue of whether the IJ's

6    decision to grant Islam asylum precludes the USCIS from denying him an adjustment of status

7    based on terrorist activity because it was already litigated by the same parties and a final judgment

8    was entered on the merits.[1] For the reasons set forth below, collateral estoppel is triggered by the

9    prior proceeding and, accordingly, plaintiff's motion must be granted and defendant's cross motion

10   denied.

11                            **III.    LEGAL STANDARD**

12           Under the Administrative Procedure Act, a reviewing court may set aside an agency's

13   action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

14   law." 5 U.S.C. § 706(2)(A). Agency action may be reversed under the APA's arbitrary and

15   capricious standard only "if the agency has relied on factors which Congress has not intended it to

16   consider, entirely failed to consider an important aspect of the problem, offered an explanation for

17   its decision that runs counter to the evidence before the agency, or is so implausible that it could

18   not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs.*

19   *Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

20           Where the court is reviewing an agency's construction of a statute, the court must consider

21   first whether Congress has directly addressed the issue. *Chevron U.S.A., Inc. v. Natural Resources*

22   *Defense Council, Inc.*, 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the end

23   of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed

24   intent of Congress." *Id.* at 842-43. If the statute is ambiguous, the court must determine whether

25

---

26   [1]Plaintiff does not dispute that he was involved with MQM-A and APMSO in the past. In fact, he
     testified at his asylum proceeding that he put up posters for rallies, delivered messages and set up
27   chairs for MQM-A. (AR 164-165).

28                                          ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
                                                                         CASE NO. 14-cv-05326-RS

United States District Court
Northern District of California

1    the agency's construction of the statute is reasonable. *Id*. If the construction is reasonable, then the

2    court should give deference to the agency, unless it appears that the agency's construction is

3    contrary to clear Congressional intent. *Id*. at 845; *INS v. Cardoza–Fonseca*, 480 U.S. 421, 447–48

4    (1987).

5                                    **IV.    DISCUSSION**

6        A.   The Elements of Collateral Estoppel Are Met.

7            Collateral estoppel, also known as issue preclusion, "applies only where it is established

8    that '(1) the issue necessarily decided at the previous proceeding is identical to the one which is

9    sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3)

10   the party against whom collateral estoppel is asserted was a party or in privity with a party at the

11   first proceeding.'" *Hydranautics v. FilmTec Corp.,* 204 F.3d 880, 885 (9th Cir. 2000) (quoting

12   *Younan v. Caruso,* 51 Cal.App.4th 401, 406-07 (1996)). Once an issue is actually litigated, the

13   court's determination is conclusive in subsequent suits based on different causes of action. *In re*

14   *Berr*, 172 B.R. 299, 306 (B.A.P. 9th Cir. 1994).

15           The rationale behind collateral estoppel is the "obvious principle of judicial policy that a

16   losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an

17   issue identical in substance to the one he subsequently seeks to raise." *Astoria Federal Say and*

18   *Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1952). To allow repeated claims on the same issue

19   would drain judicial resources and overly burden parties who have already argued to final

20   judgment successfully. *Id*. at 107-08.

21           Collateral estoppel is not appropriate if it is clear from the plain language of the statute that

22   to apply the preclusion would be contrary to the legislative intent. *Id*. at 108. There is still a

23   presumption, however, that Congress legislated with common law adjudicatory principles - like

24   collateral estoppel - in mind. *Id*. Collateral estoppel also applies to the decisions of administrative

25   agencies. "When an administrative agency is acting in a judicial capacity and resolved disputed

26   issues of fact properly before it which the parties have had an adequate opportunity to litigate, the

27   courts have not hesitated to apply res judicata to enforce repose." *United States v. Utah Const. &*

28
                                    ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
                                    CASE NO. 14-cv-05326-RS

United States District Court
Northern District of California

1    *Mining Co.,* 384 U.S. 394, 421-22 (1966) (collecting cases). The Supreme Court has "long favored

2    application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to

3    claims) to those determinations of administrative bodies that have attained finality." *Astoria,* 501

4    U.S. at 107-08. The Ninth Circuit has further stated that "[i]ssue preclusion applies to immigration

5    proceedings." *Belayneh v. I.N.S.*, 213 F.3d 488, 492 (9th Cir. 2000).

6           i.      The Same Parties Appear in Both Proceedings.

7           It is undisputed that the same parties appeared in the 2007 asylum proceeding as in the

8    status adjustment proceeding. This element of collateral estoppel is met if the party against whom

9    issue preclusion is asserted "was a party or in privity with a party at the first proceeding." *Paulo v.*

10   *Holder,* 669 F.3d 911, 917 (9th Cir. 2011) (quoting *Hydranautics v. FilmTec Corp*., 204 F.3d 880,

11   885 (9th Cir. 2000)). In plaintiff's asylum proceedings, the U.S. Department of Homeland

12   Security (DHS) represented the government. USCIS is a sub-agency of the DHS. Therefore, the

13   first prong of the collateral estoppel test is fulfilled because the DHS and the USCIS share an

14   agency relationship and a substantial interest. *See U.S. v. ITT Rayonier, Inc.,* 627 F.2d 996, 1003

15   (9th Cir. 1980).

16          ii.     The Issue was Actually Litigated.

17          The question of whether plaintiff was inadmissible for adjustment of status based on

18   terrorist activities under 8 U.S.C. § 1182(a)(3)(B)(i) is the same issue that was decided in

19   plaintiff's 2007 asylum proceedings when it was actually litigated. For collateral estoppel to apply,

20   plaintiff is required to show that the estopped issue is identical to an issue already litigated and

21   that the issue must have been decided in the first case. *Steen v. John Hancock Mut. Life Ins. Co*.,

22   106 F.3d 904, 912 (9th Cir. 1997).

23          An asylee who has been physically present in the country for at least one year can apply

24   for an adjustment of status to permanent resident status if he is "admissible... as an immigrant

25   under this chapter at the time of examination for adjustment." 8 U.S.C. § 1159(a)(2)(b). One way

26   an alien is considered inadmissible is if he engaged in terrorist activity as defined in 8 U.S.C. §

27   1182(a)(3)(B)(i)(I), the same statute used in asylum proceedings. "In other words, both 8 U.S.C. §

28                                                         ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
                                                                              CASE NO. 14-cv-05326-RS

United States District Court
Northern District of California

1    1158 (the statute governing petitions for asylum) and 8 U.S.C. § 1159 (the statute governing

2    petitions for permanent resident status,) look to 8 U.S.C. § 1182 (the statute governing

3    inadmissible aliens) to determine whether an alien is eligible for relief." *Amrollah v. Napolitano,*

4    710 F.3d 568, 571 (5th Cir. 2013). Thus, the issues were identical at each proceeding.

5         Indeed, the precise issue of whether Islam participated in terrorist activity under 8 U.S.C. §

6    1182(a)(3)(B)(i)(I) was actually litigated in the asylum proceeding. The DHS cross examined

7    Islam during his asylum hearing about his involvement in MQM-A and APMSO. (AR 203-219,

8    247-264). The DHS and Islam, during closing argument, each addressed whether Islam was

9    involved in terrorist activity. (AR 268-279).

10        Defendant argues that the IJ's opinion never mentioned the relevant statute, 8 U.S.C. §

11   1182, and "[b]ecause there is no final judgment with respect to Islam's admissibility, collateral

12   estoppel cannot apply." (Def. Mot., ECF No. 18, 12: 12-26).[2] It goes on to insist that because

13   neither the IJ nor the BIA in granting Islam asylum relied on the absence of any terrorist activity

14   and "no provision under 8 U.S.C. § 1182 is mentioned in any of the three underlying decisions

15   contained in the record," the issue was not actually litigated. (Def. Mot. ECF No. 18, 12:18-20).

16   Typically, collateral estoppel can only apply to issues where there was an express finding on the

17   allegation for which preclusion was sought. *In re Harmon*, 250 F.3d 1240, 1247 (9th Cir. 2001)

18   (quoting *Williams v. Williams,* 223 P.2d 248, 252 (Cal. 1950)). "However, the express finding

19   requirement can be waived if the court in the prior proceeding necessarily decided the issue: As a

20   conceptual matter, if an issue was necessarily decided in a prior proceeding, it was actually

21   litigated." *In re Harmon*, 250 F.3d 1240, 1248 (9th Cir. 2001). Because the IJ was statutorily

22

23   ───────────────

     [2] To clarify, defendant claims that the issue of whether or not Islam was "admissible" was not
     decided in the 2007 asylum hearing. It is unclear whether defendant means admissible as an asylee

24   or admissible as a permanent resident. The issue of whether Islam was admissible as an asylee was
     necessarily decided in Islam's 2007 asylum hearing because he was given asylum and none of the

25   inadmissibility bars in 8 U.S.C. § 1182 applied to him (if they did apply, he would have been
     "ineligible to be admitted to the United States. ") 8 U.S.C. § 1182(a). The issue of whether or not

26   Islam was "admissible" as a permanent resident was not decided in the 2007 asylum hearing, and
     plaintiff is not arguing that it was. What, according to plaintiff, is estopped is the issue of whether

27   Islam was involved in terrorist activity.

28                                        ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
                                          CASE NO. 14-cv-05326-RS

*United States District Court*
*Northern District of California*

1    barred from granting Islam asylum if he was found to have participated in terrorist activity, that

2    issue was necessarily decided when the IJ did in fact grant Islam asylum.

3           iii.    The Finding of Admissibility was Essential to the Prior Judgment.

4           Collateral estoppel applies here because the finding of admissibility was essential to the

5    BIA's final ruling. The applicable section of the relevant statute reads, "[a]ny alien who (I) has

6    engaged in terrorist activity . . . is inadmissible." 8 U.S.C. § 1182(A)(3)(b)(I). After both parties

7    actually argued the issue, the IJ found Islam inadmissible for asylum because of a lack of

8    credibility. (AR 107-122.) On appeal, the BIA declined to uphold the IJ's "adverse credibility

9    finding" and vacated the IJ's decision. (AR 39-40.) On remand, the IJ granted Islam's application

10   for asylum, which by necessity meant the judge found that the terrorism bar did not apply. Had the

11   terrorism bar applied, the IJ would have been precluded from granting Islam asylum.

12          Since the issue was fully litigated by both parties, the BIA had a full record of Islam's

13   involvement in MQM-A and APMSO. Against that backdrop, by definition the BIA found that

14   Islam was not barred from asylum and therefore did not engage in terrorist activity.

15   B.  The Plain Language of the Statute Indicates a Legislative Intent to Allow Collateral

16       Estoppel to Apply.

17          Collateral estoppel should not be applied where it is clear from the plain language of the

18   statute that the legislature did not intend for it to apply. *Astoria,* 501 U.S. at 107. Plaintiff and

19   defendant disagree on the interpretation of the legislative intent of the statute.

20          Defendant contends the language that an asylee be admissible as a permanent resident "at

21   the time of examination for adjustment," contemplates an entirely new inquiry into the asylee's

22   admissibility regardless of the prior asylum proceeding. 8 U.S.C. § 1159(a)(2)(b)(5). Furthermore,

23   defendant argues that because Congress enacted a two-step process for aliens to become

24   permanent residents (the first step being the application for asylum and the second step being the

25   adjustment of status application for permanent residency) that the statutory structure presumes two

26   wholly separate and individual inquiries into admissibility.

27   Plaintiff argues that the two-step statutory scheme enacted by congress is not intended to bar

28                                                        ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
                                                          CASE NO. 14-cv-05326-RS

United States District Court
Northern District of California

1    collateral estoppel, but instead to (1) account for changes in facts and circumstances that might

2    make an asylee ineligible for admissibility and (2) to adjudicate the separate statutory bars that

3    exist for permanent residency, but that do not exist for asylum applicants. Plaintiff's argument is

4    the more persuasive.

5    A presumption arises that Congress has legislated within the context of well-established

6    common law principles (like collateral estoppel.) *Astoria*, 501 U.S. at 108. The presumption of

7    collateral estoppel applies unless "a statutory purpose to the contrary is evident." *Id*. Defendant's

8    interpretation of the phrase "at the time" in 8 U.S.C. § 1159(a)(2)(b)(5) as reflecting Congress's

9    intent to foreclose collateral estoppel is unwarranted. As plaintiff points out, a change in facts or

10   circumstances would make it necessary for a judge to reevaluate an asylee's admissibility at the

11   time of examination for adjustment.  For example, if new facts arose that were not known to the IJ

12   in Islam's asylum proceeding about his involvement in terrorist activities, then it would be

13   necessary to reevaluate his admissibility under § 1182(a). No such circumstance is present here as

14   all parties agree Islam's relevant activity ended in 1997, well before the 2007 asylum hearing.

15   Likewise, the two step process is not indicative of the legislative intent to bar collateral

16   estoppel. The second step (for adjustment of status) includes a number of bars to admissibility that

17   do not apply to asylum applicants. *See* 8 U.S.C. §1182(a)(1)-(10). The one year wait time is a trial

18   period to allow the government to assess how an asylee adjusts to the United States. The second

19   step is to evaluate any new information or problems that may have arisen in that year. There are no

20   new allegations of terrorist activity pertaining to Islam any time after his asylum application was

21   granted. Therefore, adjudicating the same issue twice is exactly what the goals of collateral

22   estoppel are meant to prevent: a waste of judicial resources, unfairness to parties who have already

23   fully litigated an issue, and inconsistent decisions. *See Astoria,* 501 U.S. at 107-08; *see also*

24   *Amrollah v. Napolitano,* 710 F.3d 568 (5th Cir. 2013) (holding that an IJ's decision to grant an

25   alien asylum necessarily included a finding that he was not engaged in terrorist activities, and

26   therefore the USCIS was collaterally estopped from denying that alien an adjustment of status on

27   those grounds).

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.    CONCLUSION

Because the decision of the USCIS was contrary to law, plaintiff's motion for relief under

the APA is granted. Accordingly, the decision of the USCIS denying Islam's application for

adjustment of status to permanent resident of the United States based on 8 U.S.C. §

1182(a)(3)(B)(i)(I) is reversed. Plaintiff's motion for summary judgment is GRANTED and

defendant's motion is DENIED.

**IT IS SO ORDERED**.

Dated: 9/25/15

_____
RICHARD SEEBORG
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 14-cv-05326-RS